YOUNG, J.
(concurring in part and dissenting in part). This case poses a deceptively simple question: where, if anywhere, can a member of the public walk on the private beach of one of our Great Lakes without trespassing on a lakefront (littoral) owner’s property?
Although the question is simple, the answer, as amply demonstrated by the more than one hundred pages of the rival opinions filed in this case, is muddled by an abstruse body of precedent that has been less than precise in defining critical terms and issues. This was a well-briefed and argued case that has resulted in a vigorous debate within the Court. The opinions of the majority and Justice MARKMAN present compelling, principled, but competing constructions of an ambiguous body of Michigan law and that of other jurisdictions concerning Great Lakes property rights. In the final analysis, I believe that answer offered by Justice MARKMAN is more firmly anchored than that of the majority in the admittedly obscure property law of the Great Lakes.
*705 I concur in the majority’s determination that the Great Lakes Submerged Lands Act (GLSLA), MCL 324132501 et seq., does not create a right to walk the shores of our Great Lakes. The Act plainly evinces the Legislature’s intent to regulate the use of land below what the International Great Lakes Datum identifies as the “ordinary high water mark,” rather than to define new public rights or limit, established property rights.[1]
However, I join Justice MARKMAN’s opinion with respect to the other issues presented by this appeal. Like Justice MARKMAN, I believe the majority errs by recognizing a right that we have never before recognized — the right to “walk” the private beaches of our Great Lakes — and by granting public access to private shore land up to an ill-defined and utterly chimerical “ordinary high water mark” as described in the majority opinion.[2]
To be sure, the majority’s opinion constitutes a concerted and honest effort to give coherence to a very vague body of precedent. However admirable the majority’s effort, I remain convinced that the “ordinary high water mark” concept on which the majority relies applies only to tidal waters, with their regularly recurring high and low tides.[3] The only *706 “water mark” that one can find on the Great Lakes is the water’s edge — viz., the wet portion of the shore over which the lake is presently ebbing and flowing. I believe it is only in this area of wet shoreline that the public may walk. They may do so, not because of a recognized “right to walk” the otherwise private beaches of our Great Lakes, for no such “right” has ever been recognized previously to be a part of Michigan’s public trust doctrine.[4] Nor, in my view, is the public’s opportunity to walk the shoreline a product of an overlap between private and public property titles as the majority asserts. Rather, I believe that the littoral landowner has no property claim to assert over submerged land — land over which the waters of a Great Lake is presently ebbing and flowing and which constitutes the lake bed. This area is the outer boundary of the public trust that is owned by and maintained for the People of Michigan.
The difficulty of the majority’s rule and the soundness of Justice MARKMAN’s approach is evident when one actually tries to apply their different standards to the shore. In the attached photograph,[5] an area of darker, wet sand forms the outer boundary of the lake bed. The water is presently acting on this portion of the beach, as evidenced by the fact that the land is waterlogged. Under Justice MARKMAN’s view and my own, it is only in this area that the public may walk, and it may do so because the land is presently subject to reinundation and is part of the lake bed. Thus, in the photograph, *707 both the seagull and the beach walker are within the public trust.[6]
[[Image here]]
Where, however, lies the majority’s “ordinary high water mark” in this photograph? Presumably, the majority would identify the point where sand gives way to vegetation in the upper right-hand corner of the picture. The lake water is nowhere near that point now and, absent a storm, the water is unlikely to reach that point any time in the near future. Even if the lake did rise to meet the vegetation line due to extremely high precipitation or powerful barometric forces, in what sense would the line of vegetation be an ordinary high water mark in the sense suggested by the majority’s definition?
Moreover, the majority notes that its ordinary high water mark excludes all dry land except that “tempo *708 rar[ily] expos [ed]”[7] by the water. The pictorial beach illustration shows how unsatisfactory is the majority’s formulation of its definition of “ordinary high water mark” as applied to our Great Lakes: What exactly does the majority mean by “temporary” exposure? If it simply means land from which the lake waters have “not permanently receded,”[8] at what point may anyone determine that the recession of the water is “permanent”? If the portion of the shore between the lake bed (including the wet sand area over which the lake is presently lapping) and the vegetation line has been dry for a season or more, can it truly be argued that this area of the beach is “temporarily” exposed? These are apparently pure questions of fact for the majority,[9] but I believe they are critical threshold questions that must be posed and answered when giving the term “ordinary high water mark” a workable legal definition as applied to the Great Lakes.
In essence, then, I believe that the majority concludes that the dry sandy area in the attached picture is entirely below the “ordinary high water mark” (thus within the protected, state-owned public trust) because this area looks like it may have been subject to the influence of water at some unidentifiable point in the past and because it may again, at some unidentifiable point in the future, be covered by the lake. If nothing else, this is an impractical proposition because it requires the uncritical application to our nontidal Great Lakes of a term — the “ordinary high water mark”— that is applicable only to tidal waters.
I believe the analysis offered by Justice MARKMAN is more persuasive than that offered by the majority. In *709 my view, not only has Justice MARKMAN analyzed the applicable common law decisions with greater accuracy but, in contrast with the majority opinion, he has articulated a rule that is both faithful to the physical realities of our Great Lakes and consonant with the available confused precedent that we have all valiantly struggled to decipher.[10]
For these reasons, I concur in part 11(A) of the majority opinion but join parts I-III and V of Justice MARKMAN’s opinion in respectfully dissenting from the remainder of the majority opinion.

 See ante at 681-685.

 See ante at 685-694. The majority concedes that: “Applying a term [ordinary high water mark] from the common law of the sea, despite the obvious difference between the oceans and the Great Lakes, has lead to some apparent discontinuity in the terminology employed in our case law.” Ante at 691. Precisely so. In effort to employ a term that does not adequately reflect the physical realities of our Great Lakes, the majority has borrowed definitions variously from statutes and Wisconsin cases in a struggle to make this tidal term fit where it does not, and in so doing, has immeasurably expanded the scope of the public trust.

 See post at 730-734.

 Until today, Michigan cases have only recognized the right of the public to use the public trust for navigation, hunting, fishing, and fowling. See, e.g., Hilt v Weber, 252 Mich 198, 224; 233 NW 159 (1930); Collins v Gerhardt, 237 Mich 38, 46; 211 NW 115 (1926); State v Lake St Clair Fishing & Shooting Club, 127 Mich 580, 586; 87 NW 117 (1901).

 Photograph by David Hansen, Minnesota Agricultural Experiment Station, University of Minnesota. Reproduced with permission.

 Accordingly, I would hold that plaintiff may walk in the zone of wet sands on Lake Huron, provided that she does so without creating a nuisance, because the defendants have no property interests in the bed of that lake.

 Ante at 691.

 Ante at 691.

 Ante at 694.

 If we must transform the term “ordinary high water mark” in order to use it, I believe that we ought at least define and apply it in a way that reflects the physical nature of our non-tidal Great Lakes and that does least damage to heretofore stable lakefront property rights in the State.